[No. 14409. In Bank. — July 21, 1893.]

## JEROME B. COX, RESPONDENT, *v.* D. M. DELMAS, APPELLANT.

ATTORNEY AND CLIENT — ACTION TO RECOVER MONEY COLLECTED — PLEADING — DEMAND — DENIAL OF OWNERSHIP — EVIDENCE. — In an action to recover money alleged to have been collected by an attorney for his client, in which the answer denies that the defendant received the money sued for as attorney for the plaintiff, and alleges that he received it in his own right and as his own property, and where it was proved at the trial without objection that the plaintiff demanded the money of the defendant before the suit was commenced, a judgment for the plaintiff will not be reversed for failure of the complaint to aver such previous demand.

ID. — DEMAND BEFORE SUIT, WHEN UNNECESSARY. — When the time has come for the doing of an act, which it is the duty of the defendant to do unconditionally, no demand other than the suit itself is necessary; nor is a demand before suit required where it appears that it would have been unavailing, and would not have changed the right and relations of the parties, or where the answer denies the relation on which the action is founded, although a demand and refusal would otherwise be a condition precedent to the right of the plaintiff to maintain the action.

Id. — Purchase of Outstanding Interest in Cause of Action by Attorney for Benefit of Client — Contract between Them — Consideration — Rescission. — Where an attorney purchased from an administrator of a deceased person an outstanding interest in the cause of action, which his client, previous to the employment of the attorney, had assigned and transferred to the deceased in his lifetime, and also a contingent interest in the same cause of action in favor of a former attorney, who had transferred it to the same person as security for a debt, and subsequently to the purchase of those outstanding interests, the attorney and client executed a written instrument reciting the purchase by the attorney, and that he has by regular sale, assignment, and transfer become invested with and now holds all the rights and interest which said deceased person held, and declaring that it is covenanted and agreed by the parties that appellant is the owner thereof, and that the client "sells, assigns and makes over" the same to the attorney, and more than four years thereafter, the attorney, upon final settlement and adjustment of the cause of action, collected the amount of the interests so purchased, claiming them as his own, and the client subsequently commenced an action to recover the money so collected less the amount of purchase-money, and the jury found upon trial of the cause that the client commenced negotiations for the purchase, that the attorney agreed to advance the purchase-money for him and to buy the claim for him ; that the client received no consideration from the attorney at the date of the written instrument, that the attorney had not established that the transaction was fair and that no advantage had been taken of the client, and that the money so collected was the property of the client; *held,* that the instrument executed between the attorney and client was not a contract, founded upon any consideration, and did not require a rescission before the action could be maintained, nor to support a judgment in favor of the client for the amount so collected less the amount of purchase-money paid, with legal interest.

Id. — Fiduciary Relation — Duty of Attorney to Client. — The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity.

Id. — Advice to Client — Burden of Proof. — If an attorney on his own account has a transaction with his client about the subject of litigation, he must give to the client all that reasonable advice against himself that he would have given him against a third person, and must show affirmatively that he gave full and proper advice in the premises, and acted with entire fairness in the transaction, and took no advantage of his client.

Id. — Good Faith of Attorney — Support of Verdict. — Although the attorney may without doubt consider that the transaction with the client was entirely proper, and one which he had a perfect right to enter into, yet where the findings of the jury are against him, and the appellate court cannot say that the verdict had no support in substantial evidence, the verdict and judgment in favor of the client cannot be disturbed.

Id. — Special Findings — General Verdict. — Where the special findings of a jury are inconsistent with a general verdict, the special findings must control, and the court must give judgment accordingly.

Id. — Compromise Verdict — Consistency of Findings — Control of Judgment. — Where the jury have specially found that the whole amount of money collected by the attorney upon the claims purchased by him, less the amount of purchase-money paid therefor, with legal interest, was the property of the client, and have also specially found that plaintiff is entitled to ten thousand dollars less than said sum allowed by the jury by way of compromise, and have rendered a general verdict for the compromise sum specially found, the special findings are not inconsistent with each other, and the first special finding must control the judgment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The principal facts are stated in the opinion:

The record discloses a written agreement between Cox and the executors of the Reese estate, dated September 7, 1880, and which was executed avowedly to supply the place of a lost agreement between Cox and Arnold and Michael Reese, and which shows that on the twenty-fifth day of May, 1868, there was sold under execution to certain Chinese creditors of Cox and Arnold all the rights of Cox and Arnold in the cause of action, in the case of *Cox* v. *McLaughlin*, and that subsequently all their rights in a judgment recovered by them, March 16, 1870, was also sold under execution, and that Michael Reese took an assignment of each of the certificates of sale at the request of Cox and Arnold, under an agreement between them that he should have an interest in the cause of action in that case to the amount of $25,000, and be entitled to be paid that amount out of any judgment recovered in that action, and that Cox thereupon covenanted with the executors of Reese "that they, as such executors, are the owners of and shall be entitled to receive and be paid the sum of $25,000 out of the proceeds of any judgment that may be obtained by the plaintiff in this action against the defendants therein, or any of them; and I do hereby sell, assign, and make over to said executors an interest to the extent of $25,000 in said cause of action, and in any judgment which may be obtained in this action; and I do hereby authorize them, the said executors, to collect, receive, and receipt for the same. This agreement is to take the place of said former agreement, as to the same subject-matter, now lost or mislaid, and not to be considered as a further or other agreement.

"Witness my hand this seventh day of September, A. D. 1880.

"JEROME B. COX."

The record shows that Moses G. Cobb, who had formerly been employed by plaintiff as his attorney in the case of *Cox* v. *McLaughlin*, had a written agreement with Cox that he should receive for his services ten per cent of whatever sum

should ultimately be recovered by plaintiff from the defendants in that action, and that that claim had been assigned by Cobb to secure a note from Cobb to Michael Reese, and constituted a portion of the assets of his estate. This note on June 14, 1884, amounted to $29,520.78, and was surrendered by Delmas to Cobb for a new note of that amount from Cobb to Delmas, for which it was agreed that the assignment from the Reese estate of this ten per cent claim should stand as security. The written instrument, "Exhibit A," signed by Cox and Delmas, and dated February 11, A. D. 1884, but found by the jury to have been executed the following day, recites the original right of Reese to an interest of $25,000 in the cause of action in *Cox* v. *McLaughlin*, and to be paid that sum out of the proceeds of any judgment that may be obtained by plaintiff, according to the agreement between Cox and the executors of Reese executed September 7, 1880, and proceeds to say that, "whereas, said party of the second part has, by regular sale, assignment, and transfer, become invested with and now holds all the rights and interest which said Micheal Reese holds as hereinabove stated; now, therefore, it is hereby covenanted and agreed by and between the parties hereto that said party of the second part is, the owner of and entitled to an interest in said cause of action, to the amount of $25,000, and that he is and shall be entitled to receive and be paid the said sum of $25,000 out of the proceeds of any recovery that may be obtained by the plaintiff in said action against the defendant therein, either by judgment, compromise, or voluntary payment, and the party of the first part hereby sells, assigns, and makes over to said party of the second part an interest to the extent of $25,000 in said cause of action, and in any recovery which may be obtained in said action, in favor of plaintiff therein, either by judgment, compromise, or voluntary payment, and does hereby authorize said party of the second part to collect, receive, and receipt for the same." Recitals are further made as to the origin of the Cobb claim, and its transfer to the Reese estate, and to Delmas, and similar words of covenant, transfer, and authority to collect, are applied to that claim by the terms of the written instrument, which concludes with a declaration that it does not include the ten per cent of the cause of action which Cox was entitled to

receive from Delmas as his counsel in the case, which was "provided for in a separate agreement between the parties hereto."

The eighteenth special finding of the jury stated that "defendant had retained and kept $32,862 belonging to plaintiff since May 21, 1888"; but in answer to the nineteenth inquiry, which was "what amount is due plaintiff, if any, with interest from May 21, 1888, at seven per cent per annum?" the jury specially found as follows: "A. Total, $22,862. In all, without interest, being the total amount allowed plaintiff herein. Due plaintiff, $36,014.77; less cash advanced to buy assignment of Reese estate and Cobb claim, $3,152.77; allowed defendant by way of compromise, $10,000; balance due plaintiff, $22,862." The jury returned a general verdict for the plaintiff for $22,862, repeating in the general verdict the same calculation contained in the nineteenth special finding. The court ordered judgment in accordance with the eighteenth special finding.

*Garber, Boalt & Bishop, William F. Herrin,* and *H. L. Gear,* for Appellant.

Cox cannot recover in assumpsit for want of rescission of the contract made with Delmas, which authorized Delmas to receive the money as his own, and because he in fact received it as his own, with the subsisting and continuing consent and authority of Cox. (*Hogan* v. *Weyer,* 5 Hill, 390; *Byard* v. *Holmes,* 33 N. J. L. 119; *Buchanan* v. *Beck,* 15 Or. 567; *Stone* v. *Knight,* 23 Pick. 97; *Dickinson* v. *Lane,* 107 Mass. 548, 549; *McClung* v. *Foshour,* 47 Hun, 421, 423, 424; *Fuller* v. *Atwood,* 13 R. I. 316; *Pearsoll* v. *Chapin,* 44 Pa. St. 11, 12; *Campbell* v. *Fleming,* 1 Ad. & E. 40; *Cushman* v. *Marshall,* 21 Me. 122; *Weeks* v. *Robie,* 42 N. H. 316; *Cook* v. *Gilman,* 34 N. H. 556; *Weston* v. *Downes,* 1 Doug. 23; *Rowntree* v. *Jacob,* 2 Taunt. 141.) Money paid to the defendant as his own under claim of right, with the consent and by the order of the plaintiff, cannot be recovered by the plaintiff, even if the written contract between them for its payment was not valid in law. (*Vrancx* v. *Ross,* 98 Mass. 591.) The record shows without conflict that the money was paid in May, 1888, by the executors of the McLaughlin estate to Delmas as his own in Cox's presence, without objection from him, and under a claim of right in Delmas

to receive it, by virtue of the written documents produced to the executors, and without any objection on the part of Cox, who was silent for five years from the date of Exhibit A and until ten months had elapsed after the payment made under it in his presence, and he cannot now equitably recover the money thus paid by his authority and with his consent. (*Vrancx* v. *Ross*, 98 Mass. 591; *Rogers* v. *Gallard*, 18 Wash. [D. C.] 261.) One in whose presence and by whose concurrence money has been paid to another as his own, cannot recover the money from him. (*Rogers* v. *Gallard*, 18 Wash. [D. C.] 281.) Upon the theory of an original purchase by Delmas for Cox, the contract vesting the right in Delmas was founded upon a consideration equal to that which Delmas paid for the property, for the manifest reason that Cox upon that theory must have been the debtor of Delmas for that amount, and since the contract includes an assignment of the equity of Cox to Delmas it necessarily extinguished that debt, which Delmas could not thereafter enforce. (Civ. Code, secs. 1605, 1606.) That debt, if it existed, was immediately due, no time having been fixed for its payment. (Civ. Code, sec. 1657.) Cox could elect to ratify Delmas' purchase for himself without any new consideration. (*Hill* v. *Finigan*, 77 Cal. 268, 274; 11 Am. St. Rep. 279.) A trustee is discharged from his trust by consent of the beneficiary. (Civ. Code, sec. 2282.) The concurrence and consent of a *cestui que trust* binds him not to complain of acts of the trustee to which he has assented. (*Hill* v. *Finigan*, 77 Cal. 272, 274; 11 Am. St. Rep. 279; *Butterfield* v. *Cowing*, 112 N. Y. 492; *Pope* v. *Farnsworth*, 146 Mass. 339, 344; *Connolly* v. *Hammond*, 51 Tex. 647.) The complaint is defective in not alleging a demand before suit, and the demurrer was wrongly overruled. (*Pierce* v. *Whiting*, 63 Cal. 541; *Claypool* v. *Gish*, 108 Ind. 424; *Bushnell* v. *McCauley*, 7 Cal. 421; *Anderson* v. *Hulme*, 5 Mont. 295; *Taylor* v. *Bates*, 5 Cowen, 376; *Beardslee* v. *Boyd*, 37 Mo. 180; *Cummins* v. *McLain*, 2 Ark. 402; Civ. Code, sec. 1987; *Dodge* v. *Clark*, 17 Cal. 586; *Morgan* v. *Menzies*, 65 Cal. 243.) The denials and claims of the answer ought not to help the ruling on demurrer. The complaint should support the judgment regardless of the answer. (*Mercier* v. *Lewis*, 39 Cal. 532; *Collins* v. *Bartlett*, 44 Cal. 381; *Sijourney* v. *Zellerbach*, 55

Cal. 440; *Barron* v. *Frink*, 30 Cal. 486; *Morgan* v. *Menzies*, 60 Cal. 341; *Harmon* v. *Ashmead*, 60 Cal. 441, 442.) Delmas had a right to purchase the outstanding rights of the Reese estate, unaffected by the relation of attorney and client between him and Cox, which did not exist *in hœre*. (*Devinney* v. *Norris*, 8 Watts, 314; *Sallade's Appeal*, 36 Pa. St. 429; *Edwards* v. *Meyrick*, 2 Hare, 60, 70; *Porter* v. *Peckham*, 44 Cal. 204, 208.) An attorney in this state, whatever the rule may be elsewhere, has a right to contract for a contingent interest in the subject-matter of the litigation, either directly with his client, or by purchase from another with whom the client has made such contract. (*Matthewson* v. *Fitch*, 22 Cal. 86–95; *Love* v. *Watkins*, 40 Cal. 556, 557, 562, 563; 6 Am. Rep. 624; *Hoffman* v. *Valljo*, 45 Cal. 564, 565, 572; *Ballard* v. *Carr*, 48 Cal. 74; *Howard* v. *Throckmorton*, 48 Cal. 482, 483; *Howell* v. *Budd*, 91 Cal. 351, 352; *Luco* v. *De Toro*, 91 Cal. 408.) It is a rule of equity, expressly affirmed by this and other courts, that where the consideration of a purchase by an attorney from his client was adequate *at the time of the purchase*, and there is an element of speculative uncertainty in the thing purchased, *the outcome of the speculation ought not to be considered*, and that *only the market value of the property at the time of the purchase is to be considered upon the question of adequacy of consideration*. (*Kisling* v. *Shaw*, 33 Cal. 425, 431, 432, 441, 444–446; 91 Am. Dec. 644; *Golson* v. *Dunlap*, 73 Cal. 164, 165, and cases cited; *Morrison* v. *Smith*, 130 Ill. 304; *Edwards* v. *Meyrick*, 2 Hare, 60, 72; *Davis* v. *Stith*, Ky., June 8, 1889, 11 S. W. Rep. 810.) The complaint avers that plaintiff "*received* no consideration" for Exhibit A, implying merely that he received no money therefor, but does not aver that Exhibit A was wholly " without consideration." It is defective in not showing that the interest purchased by Delmas was worth more in the market at the date of " Exhibit A," when his debt to Delmas was extinguished, than on the previous day of its purchase by Delmas and in not showing that plaintiff was *injured by the transaction at the time when it was entered into*. ( *Golson* v. *Dunlap*, 73 Cal. 164; *Kisling* v. *Shaw*, 33 Cal. 421, 425; 91 Am. Dec. 644; *Marriner* v. *Dennison*, 78 Cal. 212; *Holton* v. *Noble*, 83 Cal. 9; *Bailey* v. *Fox*, 78 Cal. 389, 398; *Patterson* v. *Donner*,

48 Cal. 369; *Purdy* v. *Bullard*, 41 Cal. 444; *Morrison* v. *Lods*, 39 Cal. 381; *Board etc.* v. *Younger*, 29 Cal. 172, 176.) This complaint is also defective in not averring ultimative facts constituting fraud or undue influence, regardless of the burden of proof. (*Colton* v. *Stanford*, 8 West Coast Rep. Supp. pp. 18, 119; *Golson* v. *Dunlap*, 73 Cal. 164; Wait's Fraudulent Conveyancing, sec. 141; Bigelow on Fraud, p. 450; *Loesser* v. *Loesser*, 81 Ky. 139, 144; *Motley* v. *Motley*, 45 Ala. 558, 560.) There is a failure to find upon material issues upon which evidence was offered, and the general verdict must therefore control. (*McDermott* v. *Higby*, 23 Cal. 489.) There are no findings by the court as ground of equitable relief. (*MacNaughton* v. *Osgood*, 114 N. Y. 577, 578.) The special findings of the jury are inconsistent with each other, and the court erred in ordering judgment upon the special finding, in accordance with the eighteenth special finding to the exclusion of the nineteenth special finding. Judgment cannot be ordered upon a special verdict, unless the special findings are *distinct and unequivocal.* (*Woodson* v. *McCune*, 17 Cal. 299; *Breeze* v. *Doyle*, 19 Cal. 105; *Phœnix W. Co.* v. *Fletcher*, 23 Cal. 481.) Findings are in the nature of a special verdict (*Murphy* v. *Bennett*, 68 Cal. 536), and it is well settled that inconsistent findings cannot support a judgment, and necessitate a new trial. (*Reese* v. *Corcoran*, 52 Cal. 495; *Manly* v. *Howlett*, 55 Cal. 94; *Harrison* v. *McCormick*, 69 Cal. 620; *Sloss* v. *Allman*, 64 Cal. 47; *Carman* v. *Ross*, 64 Cal. 249, 250; *Kerns* v. *McKean*, 65 Cal. 411; *Gilman* v. *Curtis*, 66 Cal. 116; *Randall* v. *Hunter*, 66 Cal. 513, 514; *Learned* v. *Castle*, 78 Cal. 454, 460.) The verdict is contrary to the legal effect of the evidence. "Exhibit A" was not a void contract, even if originally voidable in equity, and is a bar to this action.

Contracts affected by fiduciary relations become absolutely confirmed if not avoided within a reasonable time. (*Johnson* v. *Outlaw*, 56 Miss. 547; *Jones* v. *Smith*, 33 Miss. 268; *Ward* v. *Brown*, 87 Mo. 473, 474; *Wilber* v. *Robinson*, 29 Mo. App. 157; *Bliss* v. *Prichard*, 67 Mo. 185; *Wade* v. *Pettibone*, 11 Ohio, 61; 37 Am. Dec. 408; *Lyddon* v. *Moss*, 4 De Gex & J. 104; *Blockley* v. *Fowler*, 21 Cal. 329; 82 Am. Dec. 747; *Hill* v. *Finigan*, 62 Cal. 426; *Hill* v. *Finigan*, 77 Cal. 272; 11 Am.

St. Rep. 279; *Jackson* v. *Walsh*, 14 Johns. 409; *Slee* v. *Manhattan Co.*, 1 Paige, 55; *Scott* v. *Freeland*, 7 Smedes & M. 409, 419; 45 Am. Dec. 310; *Ashhurst's Appeal*, 60 Pa. St. 315; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 591, 592; *Ives* v. *Ashley*, 97 Mass. 198; *Mercer* v. *Newsom*, 23 Ga. 153; *Pearson* v. *Burditt*, 26 Tex. 172; 80 Am. Dec. 649; *Charles* v. *Dubose*, 29 Ala. 367, 370; *Wiswall* v. *Stewart*, 32 Ala. 433; 70 Am. Dec. 549; *Thorp* v. *McCullum*, 1 Gilm. 627, 628; *Rice* v. *Cleghorn*, 21 Ind. 81, 89; *Connolly* v. *Hammond*, 51 Tex. 635, 647; *James* v. *James*, 55 Ala. 525; *Clegg* v. *Edmondson*, 8 De Gex, M. & G. 787; *Blagrave* v. *Routh*, 8 De Gex, M. & G. 631.) Being a written contract, it merged all prior oral negotiations between the parties, and must control their rights, unless reformed or avoided in equity under proper pleadings. (Code Civ. Proc., sec. 1856.) Plaintiffs only remedy was in equity, under proper pleadings, and not an action at law. (*McC'ung* v. *Foshour*, 47 Hun, 421; *White* v. *Sheldon*, 4 Nev. 280, 294; *Rowntree* v. *Jacob*, 2 Taunt. 141; *Taylor* v. *King*, 6 Munf. 358; 8 Am. Dec. 746; *Monday* v. *Siler*, 2 Jones [N. C.] 390; *Norton* v. *Ray*, 139 Mass. 230; *Truman* v. *Lore*, 14 Ohio St. 155; *Clary* v. *Clary*, 2 Ired. 83; *Blockley* v. *Fowler*, 21 Cal. 329; 82 Am. Dec. 747; *Lawrence* v. *Webster*, 44 Cal. 386; *Jackson* v. *Walsh*, 14 Johns. 412, 415; *Ward* v. *Smith*, 3 Sand. Ch. 596; *Thorp* v. *McCullum*, 1 Gilm. 625; *Yeackel* v. *Litchfield*, 13 Allen, 417; 90 Am. Dec. 207.) It was too late to rescind "Exhibit A" five years after its execution, and ten months after Delmas received payment under it in Cox's presence without objection. Rescission must be prompt and the party rescinding must not wait to speculate upon the outcome. (Civ. Code, sec. 1691; *Burkle* v. *Levy*, 70 Cal. 250; *Fratt* v. *Fiske*, 17 Cal. 380; *Hammond* v. *Wallace*, 85 Cal. 531; 20 Am. St. Rep. 239; *Hill* v. *Finigan*, 77 Cal. 272; 11 Am. St. Rep. 279; *Bailey* v. *Fox*, 78 Cal. 396; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 592; *Hayward* v. *National Bank*, 96 U. S. 611; *Wiswell* v. *Stewart*, 32 Ala. 435; 70 Am. Dec. 549; *Jones* v. *Smith*, 33 Miss. 268; *Wade* v. *Pettibone*, 11 Ohio, 57; 37 Am. Dec. 408; *Johnson* v. *Outlaw*, 56 Miss. 547; *Wilber* v. *Robinson*, 29 Mo. App. 157, 166; *Ward* v. *Brown*, 87 Mo. 473, 474; *Bliss* v. *Prichard*, 67 Mo. 181.) Any cause of action to set aside in equity the con-

tract, "Exhibit A," and to enforce a constructive trust under the alleged agreement of purchase for Cox's benefit was barred in four years from the date of the transaction. (Code Civ. Proc., sec. 343; *Piller* v. *Southern Pacific R. R. Co.*, 52 Cal. 42, 44; *Hecht* v. *Slaney*, 72 Cal. 363.) The right to equitable relief is barred by law, and this is available even though the statute is not expressly pleaded. (*Harris* v. *Hillegass*, 66 Cal. 79; *Bell* v. *Hudson*, 73 Cal. 289; 2 Am. St. Rep. 791; *Sullivan* v. *Portland etc. R. R. Co.*, 94 U. S. 806; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 591, 592; *Hayward* v. *National Bank*, 96 U. S. 617, 618.) The plaintiff is bound by his acquiescence in "Exhibit A" and in the payments made to Delmas under it. When a *cestui que trust* remains silent when he should have spoken he waives and abandons his right to impeach a transaction with his trustee, and absolutely confirms it. (*Hayward* v. *National Bank*, 96 U. S. 617.)

*Galpin & Zeigler*, for Respondent.

The transaction of defendant with his client was presumptively wrongful, and he acquired no right for himself in the claims purchased. (*Newman* v. *Payne*, 2 Ves. Jr. 200; *Walmesley* v. *Booth*, 2 Atk. 25; *Ford* v. *Harrington*, 16 N. Y. 285; Weeks' Law of Attorneys, secs. 268, 277, 278, 289; *Valentine* v. *Stewart*, 15 Cal. 401; *Gibson* v. *Jeyes*, 6 Ves. 278; Story on Equity Jurisprudence, secs. 310, 313; Hill on Trustees, p. 224; *Felton* v. *Le Breton*, 92 Cal. 469; *Savery* v. *King*, 35 Eng. L. & Eq. 104; *Phillips* v. *Blair*, 38 Iowa, 652, 653; 2 Pomeroy's Equity Jurisprudence, sec. 959; *Whitehead* v. *Kennedy*, 69 N. Y. 466; *Dunn* v. *Dunn*, 42 N. J. Eq. 431.) The defendant was bound to show affirmatively that the transaction was fair, and that no advantage was taken of his client. (Weeks' Law of Attorneys, sec. 289; *Valentine* v. *Stewart*, 15 Cal. 401; *Gibson* v. *Jeyes*, 6 Ves. 278; Hill on Trustees, p. 224; *Felton* v. *Le Breton*, 92 Cal. 469; *Savery* v. *King*, 35 Eng. L. & Eq. 104; *Whitehead* v. *Kennedy*, 69 N. Y. 466; Perry on Trusts and Trustees, sec. 202; Tiffany & Bullard on Trusts and Trustees, p. 139.) Nothing was gained by taking the assignment from Rosenberg to Bull instead of to the defendant, as the principles above laid down apply to the attorney's clerk.

(Hill on Trustees, p. 225, note; *Poillon* v. *Martin,* 1 Sand. Ch. 576; Weeks' Law of Attorneys, sec. 287.) Summary proceedings are justified in cases of this kind. *(In re Dakin,* 4 Hill, 44; *Bowling Green Sav. Bank* v. *Todd,* 52 N. Y. 493.) The alleged transfer of ownership by the client unexplained, is *prima facie* contrary to public policy, and on that account and without regard to the fraud is absolutely void. (Weeks' Law of Attorneys, secs. 258, 277; *Jewett* v. *Miller,* 10 N. Y. 402; 61 Am. Dec. 751; *Valentine* v. *Stewart,* 15 Cal. 405; *Gray* v. *Hook,* 4 N. Y. 449; Comyn on Contracts, ch. 3; *Bartle* v. *Nutt,* 4 Peters, 184; *Tuxbury* v. *Miller,* 19 Johns. 311; *Cunningham* v. *Jones,* 37 Kan. 477; 1 Am. St. Rep. 257; *Wickersham* v. *Crittenden,* 93 Cal. 29; Civ. Code, sec. 2229; *Brotherson* v. *Consalus,* 26 How. Pr. 219–225; *Jones* v. *Hanna,* 81 Cal. 508.) There was no contract to be rescinded, for there can be no contract without a mutual assent, and here there was no assent which the law recognizes as such. (*Clinton* v. *Strong,* 9 Johns. 370; *Cary* v. *Hotailing,* 1 Hill, 311; 37 Am. Dec. 323; *Buffington* v. *Gerrish,* 15 Mass. 156; 8 Am. Dec. 97; *Martin* v. *Wade,* 37 Cal. 175, 176; Civ. Code, sec. 2235.) No demand was necessary, as the facts alleged and proved and established by the verdict showed that the taking of the claims to himself by defendant and the detention of the money were tortious. (*Paige* v. *O'Neal,* 12 Cal. 495; *Stewart* v. *Levy,* 36 Cal. 165; *Sargent* v. *Sturm,* 23 Cal. 360; 83 Am. Dec. 118; *Stillman* v. *Squire,* 1 Denio, 328; *Cummings* v. *Vorce,* 3 Hill, 282; *Pierce* v. *Van Dyke,* 6 Hill, 613; *Harpending* v. *Meyer,* 55 Cal. 557; *Zachrisson* v. *Ahman,* 2 Sand. 73; *Thurston* v. *Blanchard,* 22 Pick. 18; 33 Am. Dec. 700; *Walradt* v. *Maynard,* 3 Barb. 584; *Bodwell* v. *Parsons,* 10 East, 359; Hilliard on Torts, sec. 54; *Bancroft* v. *Blizzard,* 13 Ohio, 30; *Ledley* v. *Hays,* 1 Cal. 160.) The action for money had and received can be maintained to recover the value of property tortiously taken or tortiously withheld. (*Quimby* v. *Lyon,* 63 Cal. 394; *Pierce* v. *Whiting,* 63 Cal. 541; *People* v. *Central Pacific R. R. Co.,* 76 Cal. 42; *Drew* v. *Pedlar,* 87 Cal. 452; 22 Am. St. Rep. 257; *Mills* v. *Graham,* 2 Bos. & P. 146.) Laying aside the question of tortious taking and detention, no demand prior to the suit was required to be alleged or proved; for such demand is at best a

matter of proof required to be made before the plaintiff is
entitled to try his case, and is not an integral part of plaintiff's
cause of action. (Weeks' Law of Attorneys, secs. 264–308;
*Rumball* v. *Ball,* 10 Mod. 38; *Birks* v. *Trippet,* 1 Saund. 33 *b,*
note 2; *Radford* v. *Smith,* 3 Mees. & W. 258; *Rowe* v. *Young,*
2 Brod. & B. 231; *Coffin* v. *Coffin,* 7 Me. 301; *Lillie* v. *Hoyt,*
5 Hill, 398; 40 Am. Dec. 360; *Stafford* v. *Richardson,* 15
Wend. 306; *Pierce* v. *Whiting,* 63 Cal. 543; *Wooster* v. *Nevills,*
73 Cal. 58; *Chapman* v. *Burt,* 77 Ill. 342; *Bedell* v. *Janney,*
4 Gilm. 193; *Hawley* v. *Sage,* 15 Conn. 52; *Estes* v. *Stokes,* 2
Rich. 133; *Graves* v. *Ticknor,* 6 N. H. 541.) The objection
that there was no demand does not go to the ultimate right of
plaintiff but to the present cause of action only, and therefore
was not properly raised by a general demurrer, as it could be
availed of in abatement only. (*Hentsch* v. *Porter,* 10 Cal. 560,
562; 1 Ch. Pl. 446; *Coleman* v. *Woodworth,* 28 Cal. 569; *Bank*
v. *Howland,* 42 Cal. 134.) Demand before suit was proved on
the trial, which is all that was required; any defect in alleging
a request is cured by the verdict. (*Hentsch* v. *Porter,* 10 Cal.
562; *Bedell* v. *Janney,* 4 Gilm. 193; *Hawley* v. *Sage,* 15 Conn.
52; *Estes* v. *Stokes,* 2 Rich. 133; *Lounsbury* v. *Purdy,* 18 N. Y.
520, 521; *Whittlesey* v. *Delaney,* 73 N. Y. 571; Gould's Plead-
ing, sec. 14, p. 498; *Lent* v. *Padelford,* 10 Mass. 230; 6 Am.
Dec. 119; 3 Blackst. Com. 394; 2 Strange, 1006; *Bogle* v.
*Gordon,* 39 Kan. 31; *Jones* v. *Block,* 30 Cal. 228.) Where
the defendant asserts a claim or right inconsistent with plaint-
iff's claim, a demand would be unavailing and need not be
made, therefore need not be alleged. The facts here alleged
show that such demand would have been useless. (*Davenport*
v. *Ladd,* 38 Minn. 545; *Kellogg* v. *Olson,* 34 Minn. 103;
*Huntsman* v. *Fish,* 36 Minn. 148; *Ellingboe* v. *Brakken,* 36
Minn. 156; *Ormund* v. *Hobart,* 36 Minn. 306, 308; *Smith* v.
*McLean,* 24 Iowa, 322; *Newell* v. *Newell,* 34 Miss. 385; Wells
on Replevin, sec. 374; *King* v. *Mackellar,* 109 N. Y. 225;
*Fullerton* v. *Dalton,* 58 Barb. 236, 240; *White* v. *Spencer,* 14
N. Y. 250; *Simser* v. *Cowan,* 56 Barb. 395.) Defendant was
a trustee for the plaintiff, and on that ground is liable in this
action. (Week's Law of Attorneys, sec. 277; *Giddings* v.
*Eastman,* 5 Paige, 561; *Howell* v. *Baker,* 4 Johns. Ch. 118;

2 Pomeroy's Equity Jurisprudence, secs. 587, 1052; *Brison* v· *Brison,* 75 Cal. 525; 7 Am. St. Rep. 189; Civ. Code, secs. 2219, 2223–2225, 2236; *Case* v. *Carroll,* 35 N. C. 385; *Broder* v. *Conklin,* 77 Cal. 338.) . The decision of the jury on the question as to the fairness of the conduct of the defendant, and as to whether his client was by him well advised, is conclusive, as there was a substantial conflict in the evidence. (*Stuart* v. *Hoffman,* 68 Cal. 382; *Chidester* v. *Consolidated Ditch Co.,* 59 Cal. 201; *McDermott* v. *San Francisco & N. P. R. R. Co.,* 68 Cal. 34.) The objection that the general verdict should control the special for want of full findings on material issues is without merit, as counsel had an opportunity to frame special issues upon the points wherein he claims the findings are defective and neglected to do so, and he cannot now be heard to complain. (*Barnes* v. *Perine,* 12 N. Y. 23; *Voorhees* v. *Burchard,* 55 N. Y. 104; *Seymour* v. *Cowing,* 1 Keyes, 534; *Mallory* v. *Tioga R. R. Co.,* 36 How. Pr. 204; 3 Keyes, 356; *Winchell* v. *Hicks,* 18 N. Y. 565; *Jencks* v. *Smith,* 1 N. Y. 94; *Dows* v. *Rush,* 28 Barb. 180; *Lynch* v. *Kennedy,* 34 N. Y. 152; *O'Neill* v. *James,* 43 N. Y. 93; *Sexey* v. *Adkinson,* 40 Cal. 418; *Alhambra etc. W. Co.* v. *Richardson,* 72 Cal. 599.) The omission to find on all the issues could not have been error, as a finding upon such points, if made, would have been adverse to the defendant. (*Johnson* v. *Perry,* 53 Cal. 354; *Brison* v. *Brison,* 90 Cal. 329.) It must be shown also that evidence was introduced on the points to be decided in the omitted findings. (*Himmelman* v. *Henry,* 84 Cal. 104; *Hawes* v. *Clark,* 84 Cal. 275; *Wise* v. *Burton,* 73 Cal. 175.) The evidence must have been sufficient to have warranted a finding on these points for defendant. (*Winslow* v. *Gohransen,* 88 Cal. 453.) The omitted findings must have been sufficient to warrant a reversal. (*Dolliver* v. *Dolliver,* 94 Cal. 642; *Brady* v. *Burke,* 90 Cal. 9; Code Civ. Proc., sec. 475; *Knowles* v. *Seale,* 64 Cal. 377; *McCourtney* v. *Fortune,* 57 Cal. 619.) The court had power to enter a judgment on the special findings. (Code Civ. Proc., sec. 262; *Pierce* v. *Schaden,* 62 Cal. 285; *Alhambra etc. W. Co.* v. *Richardson,* 72 Cal. 604.)

The Court. — This is an action to recover a certain sum of money alleged to have been collected by defendant as attorney-

at-law of plaintiff. The case was tried with a jury, and judgment was rendered for plaintiff for a little less than the amount sued for; and defendant appeals from the judgment and from an order denying a new trial.

The main features of the case are these: Prior to May, 1888, respondent had been engaged continuously for several years in litigating, as plaintiff, in the courts of this state, the suit of *Cox* v. *McLaughlin*, which suit had been brought to recover a large amount alleged to be due from McLaughlin to Cox for work done and materials furnished for the construction of a certain railroad. In 1883 appellant herein was employed by respondent as one of his attorneys-at-law in conducting said suit, and was to receive as compensation for his services as such attorney ten per cent of the amount of the judgment that should be recovered against McLaughlin. He continued to be respondent's attorney in said suit until it was concluded and settled in 1888.

Prior to said employment of appellant by respondent, the latter had recovered a judgment in the trial court against McLaughlin, which was afterwards reversed in the appellate court; and some creditors of respondent to the extent of $3,000 or $4,000 had levied an execution upon said judgment and upon said cause of action, and the same had been sold to Michael Reese, since deceased, for about the amount of the claims of said creditors. Afterwards respondent had assigned to said Reese $25,000 of his said claim against McLaughlin, for the purpose — as averred by respondent — of securing Reese for the money advanced for his said purchase of said judgment and right of action. One Cobb had also been formerly in the employ of respondent as attorney in said suit, and was to receive ten per cent of the judgment, and Cobb had assigned his claim to said Reese as security for a certain promissory note. These claims, founded upon said two assignments, were, in February, 1884, assets in the hands of the executors of said Reese, then deceased.

Early in February, 1884, respondent began negotiating with Joseph Rosenberg, one of the executors of the Reese estate, for the purchase of said $25,000 claims. That estate was then nearly settled, and the executors were desirous of closing it up,

and Rosenberg agreed to sell said claims to respondent at private sale for $1,500, or thereabouts. Thereupon respondent informed appellant of the existence of said claims, and that he (respondent) had an opportunity to purchase them for about $1,500. As to what then occurred touching the purchase of said claims, respondent and appellant disagree in their pleadings and testimony. Respondent says that he asked appellant's advice in the premises; that appellant offered to purchase said claims for respondent; that respondent assented thereto; that he brought about a meeting between appellant and Rosenberg in order to have the details of the purchase arranged; that thereupon appellant advanced the money and purchased the claim for respondent; and that, at appellant's instance and request, the purchase was made in the name of his clerk, Franklin T. Bull. On the other hand, appellant denies that he advanced money to buy said Reese claims for respondent; and maintains that he bought said claims on his own account, and as his own business speculation, and that respondent has no interest whatever therein.

It appears that when Rosenberg reported the sale to the probate court, the attorney of the heirs of McLaughlin (then deceased) made a higher bid for said claims, and appellant was compelled to raise his bid, so that he finally paid for said claims about $2,425; and that amount was paid by him on February, 11, 1884, and an assignment of the claims was made by the executors to said Bull.

On the 12th of February respondent signed a certain written instrument, a copy of which, marked "Exhibit A," is attached to the answer, which appellant handed to him already prepared, with a request that he sign it. Respondent avers and testifies that appellant informed him that it was necessary for him to sign this instrument in order to make the sale of said claims legal; that he feared that if the sale was not legal, the claims might be resold and fall into the hands of the McLaughlin estate, which would greatly embarrass him; and that relying on the advice and good faith of appellant, he executed it without communicating with other counsel, and without receiving any consideration therefor. Appellant, however, contends that respondent well knew the contents of said instrument and executed it for the

purpose which its language imports. (With respect to said instrument it is sufficient to say, at this time, that in terms it acknowledges that appellant owns said Reese claims, and is entitled to recover the amount of the same out of any judgment that might be recovered by respondent in the said case of *Cox v. McLaughlin.*)

In the case of *Cox* v. *McLaughlin* judgment was rendered for plaintiff October 21, 1886, for $98,228.80, with legal interest from June, 1886; but on appeal this court on May 1, 1888, affirmed the judgment, with the modification that interest should be allowed only from the date of the judgment in the lower court —October 21, 1886. This made a great deduction of the amount of the judgment, and respondent was desirous of filing a petition for a rehearing; but upon the advice of appellant the intention of applying for a rehearing was abandoned. On May 21, 1888, the judgment, which then amounted (in round numbers) to $110,000, was paid in the office of appellant. Of this amount respondent received (in round numbers) $63,000, and appellant retained $47,000. This amount retained by appellant included his own fee of ten per cent of the judgment, and also the $25,000 and the Cobb fee of ten per cent which had been assigned to Reese as aforesaid. By the judgment of the superior court, appellant was allowed his fee of ten per cent and the amount which he had expended for the purchase of the Reese claims, with interest thereon until date of settlement; and judgment was rendered for plaintiff for the balance of said $47,000.

The case seems to have been fairly tried upon its merits, and the jury by its special verdict found all the material issues of fact against appellant, and in favor of respondent. They found, with respect to the Reese claims, that respondent commenced negotiations with Rosenberg for their purchase, that appellant agreed to advance for respondent the necessary money to effect the purchase, and to buy them for respondent; and that the purchase was made in the name of Bull at appellant's suggestion. They also found that appellant had not established the fact that the transaction was fair and that no advantage had been taken of respondent. They also found that at the time of the payment of the judgment in the case of *Cox* v. *Mc-*

*Laughlin* the money in contest in the case at bar was paid to appellant as attorney for respondent.

Appellant contends for a reversal of the judgment upon grounds most of which, whether tenable or not, may be fairly called technical. The force of the very able briefs of his counsel is directed mainly to the point that the judgment should be reversed because the complaint does not state facts sufficient to constitute a cause of action, and that its defects are such as could not be cured by the verdict, or by anything that appeared at the trial.

The main points made against the general sufficiency of the complaint are that it contains no averment of a demand made upon appellant for the money in contest before the commencement of the action, and that it shows a contract between the parties by which appellant was to have said money, and does not show a rescission of that contract.

There is a great deal of learning and a great conflict of authorities on the subject of the necessity of a demand before suit. It is clear that when a demand is an integral part of the cause of action, as when the duty to pay, or to deliver property, or to do some act, does not arise until after demand, then, as a general rule, a demand must be averred; but that when the time had come for doing the act, and it was the duty of the defendant to do it unconditionally, then no demand other than the suit itself is necessary. Of course, the difficulty lies in applying the rule to particular cases; but the reason of the rule requiring a demand is that it would be unjust and inequitable to subject a defendant to litigation without first notifying him of plaintiff's claim so that he might have an opportunity of compliance with it without the annoyance and expense of a suit.

There are authorities which hold that it is the duty of an attorney-at-law to pay money collected for a client as soon as he receives it, and that want of previous demand is no defense to an action brought by the client for such money; and there are others which hold that it is a defense only as to the matter of costs; but it is unnecessary to pursue the subject further because it is well settled that previous demand is not required when, as in the case at bar, it fully appears that it would have been

unavailing, when it would not have changed the rights and relations of the parties, and would have been a mere useless and idle ceremony. This rule was well expressed in the opinion of this court in *Parrott* v. *Byers*, 40 Cal. 622, where the court say : " It is a familiar rule that when the relations between the parties are such that a demand and a refusal is a condition precedent to the right of the plaintiff to maintain the action, a denial in the answer of the relation on which the action is founded will dispense with the necessity of an averment in the complaint of a previous demand and refusal "; and " the law does not require a useless act to be performed, and when it is plain from the answer that if a demand had been made it would have been refused, it does not lie in the mouth of the defendant to object that no demand was made." In the case at bar the appellant, in his answer, denied that he received the money herein sued for as attorney for respondent, and alleged that he received it in his own right, and as his own property, and that respondent had no interest therein. Moreover, it was proved at the trial, without objection, that respondent had demanded said money of appellant before the suit was commenced, and that appellant had promptly and absolutely denied that respondent had any right whatever therein. Under these circumstances the position that the judgment should be reversed for the failure of the complaint to contain an averment of a previous demand cannot be maintained.

It is strenuously contended by appellant that the complaint is fatally defective because it shows a contract between the parties by which appellant was to have the money sued for, and contains no averment of a rescission of such contract; and that if respondent had any rights in the premises his remedy was a bill in equity to rescind the contract. We do not think that this position is tenable.

The complaint does not give in *hæc verba* the document, "Exhibit A," a copy of which is in the answer. The complaint, after averring the sale of said Reese claims and their purchase by appellant for respondent as aforesaid, merely states that "after said sale and within a few days," appellant handed to respondent " a paper" and requested him to sign it, saying that it was necessary in order to make said sale legal, and that

having no fear that appellant " would not deal fairly with him in regard to the purchase of said claims," and, relying on his advice and good faith, he " executed said paper at once without communicating with other counsel, and without receiving any consideration therefor." And as to the character of said " paper " it is merely stated that it contained a stipulation that appellant was the owner of said Reese claims, and entitled to collect, receive, and receipt for the same. It is further averred that prior to the production of said paper there had been no agreement between appellant and respondent " the same as or similar to what was therein stated." Therefore, what the paper states on this subject is merely that respondent, without consideration, made a certain written declaration, acknowledgment, or admission, that a certain condition of things existed; but such averments do not state any contract at all — and certainly not a contract of such dignity as to require rescission.

The foregoing are the main assaults made upon the complaint; the others do not require special notice. We think it clear that the complaint states facts sufficient to constitute a cause of action; but if we go beyond the complaint and consider " Exhibit A " independently of any mere question of pleading, we do not think that it comes within the class of contracts which must be formally rescinded in order to avoid their force or effect. The rule which makes technical rescission necessary applies to a contract by which the party seeking to ignore it has received something of value, or obtained some advantage; and, in such a case, he is not allowed to retain the thing received or the advantage obtained, and at the same time ignore the rights of the other party. He must give notice of rescission and return, or offer to return what he has received under the contract, and thus restore each party to his original *status;* but in the case at bar " Exhibit A " is not such a contract. In fact, it cannot properly be called a contract at all; it is not " an agreement to do or not to do a certain thing," and was founded upon no consideration. It was signed, according to the complaint, several days after the conclusion of the purchase of the Reese claims; and the jury found that it was signed the next day after such purchase. The exact time is immaterial because the instrument itself shows that it was signed *after* said pur-

chase; it recites that "whereas, said party of the second part (appellant) has, by regular sale, assignment, and transfer, become invested with and *now holds* all the rights and interest which said Michael Reese held as hereinbefore stated." The instrument then declares that it is covenanted and agreed by the parties that appellant is the owner of said claims. It is nothing more than a written admission of the existence of a condition caused by prior acts. It has all the formalities of a contract, but has no contract in it. If respondent had simply written upon a paper " I acknowledge that appellant bought the Reese claims for himself," such paper would have had as much legal value as "Exhibit A." Of course, in either form the paper would be admissible in evidence for what it was worth, as an admission of a party; but there was no more necessity to rescind it than there would be to rescind a receipt. There was nothing for respondent to rescind. It is true that in one part of "Exhibit A" respondent is made to say that he "sells, assigns, and makes over" a certain part of the Reese claims; but those words do not change the character of the instrument, for he had nothing to assign. The paper itself set out that Reese was the legal owner of said claims, and appellant says that he fully examined into their validity before the purchase, and satisfied himself that they were good, and that the title to them was in the Reese estate; therefore, after he had obtained an assignment of the claims from their owners, the Reese executors, the words "sells, assigns, and makes over" in "Exhibit A" had no significance.

As to the legal merits of the case, we see no reason to disturb the judgment. The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity — *uberrima fi·les.* If on his own account he has any transaction with his client about the subject of the litigation, he must with respect to such transaction be able to give, and must give, to his client "all that reasonable advice against himself that he would have given him against a third person." (*Gibson* v. *Jeyes,* 6 Ves. 278.) This is a very hard thing to do; and there are authorities which hold that all such transactions are against public policy, and absolutely void. (See Weeks' Law of Attorneys, sec. 268 et seq.,

and cases there cited.) We do not think that the current of authorities goes quite that far; but the utmost view that can be taken of the subject favorable to appellant's contention is this: that the attorney must show affirmatively that he gave full and proper advice in the premises, acted with entire fairness throughout the transaction, and took no advantage of his client. The latest expression of this rule is to be found in *Felton* v. *Le Breton*, 92 Cal. 469, where this court, through Mr. Justice Harrison speaking of this subject, says: "In any attempt by the attorney to enforce an agreement on the part of the client growing out of such transaction, the burden of proof is always upon the attorney to show that the dealing was fair and just, and that the client was fully advised." (See also cases cited in opinion in *Felton* v. *Le Breton*, 92 Cal. 469.) In the case at bar the appellant, no doubt, considers that the transaction here involved was entirely proper, and one which he had a perfect right to enter into, and that the jury should have so found. The evidence on the questions of fact touching the conduct of appellant was certainly not all one way; and it can be forcibly contended that the weight of it is on the side of appellant. But we do not weigh evidence here and determine which way it preponderates; and the finding of the jury being against appellant, we cannot say that it has no substantial support in the evidence. The case of *McDowell* v. *Milroy*, 69 Ill. 498, was a stronger case in favor of the attorney than the case at bar, for in that case it was admitted that the attorney had bought for himself; but the court says (we quote from the *syllabus*, which is a correct statement of the decision) that "when the relation of client and attorney actually exists, and the attorney, at the instance of his client, purchases a note which is secured by mortgage on the land of the client, at a considerable discount, the latter will be entitled to the benefit of the purchase *although the attorney may have bought for himself.*"

We do not think that the court erred in fixing the amount of the judgment according to the special verdict. "When a special finding of facts is inconsistent with the general verdict the former controls the latter, and the court must give judgment accordingly." (Code Civ. Proc., sec. 625.) Neither do we think that the special findings are contradictory or that

appellant was prejudiced by any absence of findings. There are no other points necessary to be noticed.

This case has been ably and exhaustively argued by counsel on both sides, and it would be impossible in an opinion of reasonable length to discuss all the positions taken, or to notice the leading authorities cited. After a full consideration of the whole case, we see no sufficient reason for disturbing the judgment.

The judgment and order appealed from are affirmed.

FITZGERALD, J., and DE HAVEN, J., did not participate in the foregoing decision.

Rehearing denied.